UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| ROBERT MUNRO WOLTERSTORFF III, | : | |
| Plaintiff, | : | |
| | : | No. 3:23-cv-1111 (VAB) |
| v. | : | |
| ANGEL QUIROS, et al., | : | |
| Defendant. | : | |

**INITIAL REVIEW ORDER**

Robert Munro Wolterstorff III ("Plaintiff"), a sentenced inmate,[1] has filed a *pro se*

Complaint under 42 U.S.C. § 1983. He names forty-one defendants, Commissioner Angel

Quiros, Warden Guadarrama, Unit Manager McKenzie, Deputy Warden Moore, Captain Colon,

Counselor Supervisor Casey, Head of Intelligence Unit Legassey, Counselor Supervisor Stanley,

Officer Lahdah, Officer Cuervo, Captain McLain, Warden Dougherty, Lieutenant Malta,

Lieutenant Cardona, Disciplinary Report Investigator Reyes, Mental Health Provider Ostheimer,

Dr. Lupis, Compliance Officer Gallagher, Dr. Naqvi, Nurse Janet, Officer Veegan, Dr. Wright,

Dr. Freston, Disciplinary Hearing Officer Lieutenant Davis, Disciplinary Hearing Officer

Lieutenant Brokowski, Lieutenant Peart, Lieutenant Loehman, ADA Coordinator Counselor

Supervisor Doolittle, Records Connor, Mental Health RN Walter LaPointe, Mental Health

APRN Walker, APRN Scott, APRN Stork, LPN Cyr, Dr. Thurber, Officer Grady, Officer

Acanto, Officer Ramos, Deputy Warden Warreck, Hearing Auditor Doe, and District

---

[1] Information available on the Department of Correction website shows that Mr. Wolterstorff was sentenced on October 19, 2018. *See* www.ctinmateinfo.state.ct.us/detailsupb/asp?id_inmt_num=398179. The Court may take judicial notice of matters of public record. *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425(KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).

Administrator Nick Rodriguez.

Mr. Wolterstorff lists various claims spanning the period from July 2020 through August 2023 and ranging from interference with religious practices to deliberate indifference to safety to denial of medical care. He seeks damages only.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a government entity or officer or employee of a government entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(b), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A. Based on this initial review, the Court orders as follows.

## I.      **BACKGROUND**[2]

 As a disciplinary sanction, Mr. Wolterstorff allegedly could not send out mail between July 13, 2023 and August 14, 2023. As a result, Mr. Wolterstorff allegedly could not "submit[ his] 1983 package in time for one of [his] complaints. ECF No. 1 ¶ 1.

On July 30, 2020, a member of the gang, the Bloods, allegedly assaulted Mr. Wolterstorff. The assault allegedly occurred after Mr. Wolterstorff told Lieutenant Ramirez that he wanted to be moved because he had "issues" with the Bloods. Mr. Wolterstorff alleges that Intelligence Officers Ortega and DeValle also were aware of his issues. In the assault, Mr. Wolterstorff allegedly was hit in the eye and face numerous times and his left arm allegedly was "smashed against the concrete and steel bars" aggravating a previously diagnosed severe acute

---

[2] For purposes of initial review, the Court considers all of the following allegations to be true.

chronic pain condition. *Id*. ¶ 2.

On November 3, 2020, Mr. Wolterstorff allegedly was confined at Osborn Correctional Institution ("Osborn"). APRN Scott allegedly ignored his "complex regional pain syndrome" and said he merely suffered from gout. As a result, Mr. Wolterstorff alleges that he filed a medical habeas action through which he was entered into a pain management program with Dr. Thimineur. Mr. Wolterstorff alleges that APRN Scott was deliberately indifferent to his medical needs. *Id*. ¶ 3.

On November 20, 2020, Mr. Wolterstorff alleges that APRN Stork removed him from Dr. Thimineur's pain management program and discontinued his oxycontin and oxycodone prescriptions without any taper. As a result of this alleged deliberate indifference to his medical needs, Mr. Wolterstorff alleges that he experienced withdrawal and "was throw back into the debilitating complex regional pain syndrome accompanied by an aggressive form of gout that sets off the prior syndrome." *Id*. ¶ 4.

While Mr. Wolterstorff was incarcerated at Osborn in 2019-2020, Intelligence Officers Ortega and DeValle, who are not defendants in this action, allegedly used knowledge that Mr. Wolterstorff was being extorted by the Bloods to try to get him to inform on the gang. When Mr. Wolterstorff refused, they allegedly issued him "unnecessary tickets." *Id*. ¶ 4 (the second paragraph numbered 4).

In May 2021, Mr. Wolterstorff allegedly was transferred to MacDougall Correctional Institution ("MacDougall"). When officials allegedly attempted to return him to Osborn, Mr. Wolterstorff allegedly told Lieutenant Legassey about his situation with the Bloods and that they threatened to "lifestar" him if he ever returned to Osborn. Mr. Wolterstorff's handler, Intelligence Officer Lahdah, allegedly used Mr. Wolterstorff's fear for his life to convince him to

become a confidential informant. *Id*. ¶ 5.

On March 24, 2023, Mr. Wolterstorff's attorney allegedly called the prison and requested Mr. Wolterstorff's confidential informant file. As a result, Intelligence Officer Counselor Supervisor Stanley allegedly issued Mr. Wolterstorff four false disciplinary tickets. Counselor Supervisor Stanley and Officer Cuervo allegedly "committed process failure on all of the tickets." Investigator Officer Reyes allegedly colluded with Stanley and Cuervo and Mr. Wolterstorff's advisor, Counselor Walker. Mr. Wolterstorff alleges that they falsified documents, and planted contraband with the assistance of Mr. Wolterstorff's cellmate. Investigator Reyes allegedly yelled at Mr. Wolterstorff's door that he was a "rat," then stated, "let's see you survive that." Disciplinary Hearing Officer Lieutenant Davis allegedly ignored Mr. Wolterstorff's defense and found him guilty of three of the four charges. *Id*. ¶ 6.

In addition, APRN Ostheimer allegedly removed Mr. Wolterstorff from his mental health medication after accusing him of diversion. Mr. Wolterstorff denied diverting medication and stated that he was not charged with diversion as one of the four disciplinary charges. *Id*. Mr. Wolterstorff further alleges that he suffered a medical emergency "that I told to C.O. Veegan to where I am deaf in my left ear and was denied treatment." *Id*.

On April 17, 2023, Officer Grady allegedly attempted to assault Mr. Wolterstorff in the medical unit waiting room in front of another inmate. Officer Grady allegedly approached in  a fighting stance and made antagonistic comments in an attempt to get Mr. Wolterstorff to fight. *Id*. ¶ 7. On May 27, 2023 and May 28, 2023, Officer Grady allegedly came to Mr. Wolterstorff's call and made comments to Mr. Wolterstorff. *Id*.

On and before April 12, 2023, Mr. Wolterstorff allegedly told Lieutenant Malta, Captain McClain, Lieutenant Legassey, and Officer Lahdah that he had issues with Blood gang members.

On May 17, 2023, Mr. Wolterstorff was allegedly assaulted by one Blood member and threatened with stabbing by another Blood member. When Mr. Wolterstorff allegedly put out his arm to defend himself, the Blood member slammed Mr. Wolterstorff's left arm, the arm he was receiving pain management treatment on, into the steel bar cell door. Since the assault, Mr. Wolterstorff allegedly has been "barely able to use [his] arm." *Id.* ¶ 9.

On May 23, 2023, Warden Guadarrama allegedly transferred Mr. Wolterstorff to Carl Robinson Correctional Institution even though he knew that Mr. Wolterstorff would not be admitted there because of his medications and the fact that the facility was an "open compound." As a result of the transfer and return, Mr. Wolterstorff allegedly lost property and his medication was delayed. *Id.*

On April 12, 2023, Warden Dougherty allegedly transferred Mr. Wolterstorff to a facility where Warden Dougherty knew that Mr. Wolterstorff's life would be in danger. He also denied Mr. Wolterstorff's grievances. *Id.* ¶ 9.

At some time while he was confined at Osborn, Mr. Wolterstorff's antidepressant and insomnia medications allegedly were discontinued without notice or taper. *Id.* ¶ 10.

On June 30, 2023, Chaplain Rosado, who is not a defendant, allegedly issued Mr. Wolterstorff a notice that he was "removed from all religious services programs for 30 days." When, after a few weeks, Mr. Wolterstorff spoke to Chaplain Rosado, he allegedly was told that he could return to religious services if he destroyed the notice. Mr. Wolterstorff did not do so. *Id.* ¶ 11.

On June 28, 2023, Officer Acanto allegedly removed a plant from Mr. Wolterstorff's Native American religious shrine and issued Mr. Wolterstorff a disciplinary ticket. On July 27, 2023, Officer Acanto allegedly yelled harassing statements at Mr. Wolterstorff before everyone

in the corridor. *Id.* ¶ 12.

On August 6, 2023, Mr. Wolterstorff allegedly was falsely accused and "set up" by Officers Ramos and Cousins. They allegedly took a piece of string and accused Mr. Wolterstorff of "pegging" his door so he could open the door at will. When Mr. Wolterstorff returned from his mid-day medication, he allegedly was taken to restrictive housing without being given any paperwork. Mr. Wolterstorff allegedly was unnecessarily strip searched causing him to expose his private areas to Lieutenant Peart and five other officers. *Id.* ¶ 13.

On August 9, 2023, Officer Ramos allegedly called Mr. Wolterstorff a "faking phiend" and stated that he should be in restrictive housing. On August 11, 2023, Lieutenant Peart allegedly asked Mr. Wolterstorff why he was preserving video as he was not attacked, and no paperwork was done. *Id.*

On August 6, 2023, when Mr. Wolterstorff returned from the restrictive housing unit, he allegedly was harassed by Bloods gang members and spit on by two Bloods members. No correctional staff took any action in response to the actions of the Blood gang members. *Id.*

Mr. Wolterstorff allegedly was never told that there would be any outside charges in connection with the three incidents on March 29, 2023 at MacDougall. The charges allegedly appeared after Mr. Wolterstorff prevailed on his appeals of the disciplinary charges. On July 14, 2023, Mr. Wolterstorff allegedly was given a "facility trip" to his arraignment because he refuses to take a "CTU trip" because of his pain management issues. *Id.* ¶ 14.

Mr. Wolterstorff alleges that, on a CTU trip, he would be required to take his 12-hour medication at 3:00 a.m. and he would experience "end of dose failure" at 3:00 p.m. If he were permitted a facility trip, Mr. Wolterstorff alleges that he would be able to take his medications at the proper time. Mr. Wolterstorff contends that ADA Coordinator Doolittle was trying to subject

him to unnecessary pain by requiring a CTU trip. *Id.*

Mr. Wolterstorff alleges that he has very limited use of his left arm, is mostly deaf in his left ear, and has limited use of his shoulder and neck. Mr. Wolterstorff attributed these conditions to the Department of Correction's failure to comply with his maintenance pain management appointments with Dr. Thimineur. *Id.* ¶ 15.

On August 8, 2023, Officers Ramos and Cousins allegedly slandered Mr. Wolterstorff and Officer Ramos said that he should be in segregation. *Id.* ¶ 16.

Osborn administrative staff, namely Deputy Warden Moore, Warden Guadarrama, Unit Manager McKenzie, Counselor Supervisor Casey, Counselor Supervisor Doolittle, and Deputy Warden Warreck, allegedly ignored Mr. Wolterstorff when he needed to address the serious issues "mentioned above." *Id.*

On November 20, 2020, APRN Stork discontinued all of his medications without a taper and told him to "meditate through the pain." *Id.* ¶ 17.

When Mr. Wolterstorff allegedly was put in segregation on March 29, 2023, all the nurses, especially RN Janet, ignored his doctor's orders. Their actions allegedly resulted in "severe flare-ups" and caused Mr. Wolterstorff to be unable to move, preventing him from eating or showering. *Id.* ¶ 18.

On June 16, 2023, after prevailing on appeal of his first hearing at MacDougall, Mr. Wolterstorff was afforded a second hearing before Lieutenant Borkowski. The head trainer of disciplinary hearing officers allegedly audited the hearing. Mr. Wolterstorff alleges that Lieutenant Borkowski did not afford him due process at the second hearing. *Id.* ¶ 19.

On July 10, 2023, correctional staff and Lieutenant Loehman, who is not a defendant, allegedly harassed Mr., Wolterstorff and tried to force him to miss his medication. *Id.* ¶ 20.

## II.   <u>DISCUSSION</u>

Mr. Wolterstorff's Complaint fails to identify the specific claims asserted against each Defendant. Instead, he generally refers to harassment, deliberate indifference, and cruel and unusual punishment over the course of a three-year period, and the Complaint arguably can be construed as including claims of deliberate indifference to medical and mental health needs, denial of due process, harassment, failure to protect/deliberate indifference to safety, denial of religious exercise, violation of the Americans with Disabilities Act, and lost property.

This wide-ranging Complaint will be addressed as follows.

### A.   Joinder of Claims

As presented, the Complaint does not comply with the Federal Rules of Civil Procedure.

Under Rule 20, joinder of multiple defendants in one action is only permitted if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences, and any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2). "What will constitute the same transaction or occurrence under the first prong of Rule 20(a) is approached on a case by case basis."  *Dixon v. Scott Fetzer Co*., 317 F.R.D. 329, 331 (D. Conn. 2016) (citation and quotation marks omitted).

The "same transaction" requirement means that there must be some allegation that the joined defendants "conspired or acted jointly."  *Arista Records LLC v. Does 1-4*, 589 F. Supp. 2d 151, 154 (D. Conn. 2008) (citation and quotation marks omitted). As the Second Circuit has observed in the Rule 13 context, whether a counterclaim arises out of the same transaction as the original claim depends on the logical relationship between the claim and whether the "essential facts of the various claims are so logically connected that considerations of judicial economy and

fairness dictate that all the issues be resolved on one lawsuit." *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978).

Mr. Wolterstorff's claims are wide-ranging and topically unrelated. As the claims arise from different series of events and would involve different law and facts, it is inappropriate to assert all of the claims in one action. *See Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 264 (D. Conn. 2012) (severance may be appropriate where claims "arise from different circumstances and would require separate analyses"). As the asserted claims appear improperly joined, some of them are subject to dismissal under Federal Rule of Civil Procedure 21, which provides that the Court may sever claims or parties that are misjoined. Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party. . . [or] sever any claim against a party.").

Accordingly, all of Mr. Wolterstorff's claims will be dismissed, without prejuidice to asserting them in separate lawsuits, except those relating to his alleged deliberate indifference to medical and mental health needs claims.

### The Deliberate Indifference to Medical and Mental Health Needs Claims

The Eighth Amendment prohibits not only "deliberate indifference to serious medical needs of prisoners," but also deliberate indifference to serious "mental health care" needs. *Spavone v. New York State Dep't of Corr. Servs*., 719 F.3d 127, 138 (2d Cir. 2013) (internal quotation marks and citation omitted). Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).

A claim for deliberate indifference to medical or mental health needs is comprised of

objective and subjective elements. Objectively, the plaintiff must allege a "sufficiently serious" medical or mental health condition. *Spavone,* 719 F.3d at 138 (citations omitted). To determine whether a condition is "serious," courts consider whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted). Subjectively, the plaintiff must allege that the defendant "knew of and disregarded the plaintiff's serious medical needs." *Id.* at 703. This culpable mental state exceeds mere negligence and is akin to criminally reckless intent. *See Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994). In addition, a disagreement over the treatment provides does not show deliberate indifference. *See Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015) (citing *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)); *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("It has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he received adequate treatment .... [T]he essential test is one of medical necessity and not one simply of desirability." (internal quotation marks and citation omitted)).

To recover money damages under any Section 1983 claim, however, from a defendant in his or her individual capacity, Mr. Wolterstorff must demonstrate "the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). A defendant is not personally involved merely because he may have supervised the defendant who directly committed the alleged violation. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Mr. Wolterstorff identifies twelve Defendants as medical or mental health care providers: Mental Health APRN Ostheimer, Dr. Lupis, Dr. Naqvi, RN Janet, Dr. Wright, Dr. Freston, Mental Health Nurse LaPointe, Mental Health APRN Walker, APRN Scott, APRN Stork, LPN Cyr, and Dr. Thurber. But, in his statement of facts, Mr. Wolterstorff describes conduct only of APRN Scott, APRN Stork, APRN Ostheimer, and RN Janet. Thus, as a preliminary matter, his claims for deliberate indifference to medical and mental health needs against the remaining eight Defendants must be dismissed for lack of personal involvement. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'") *(*quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *see also Dowtin v. O'Neil*, 416 F. Supp. 3d 159, 162 (E.D.N.Y. 2017) (dismissing §1983 action where "plaintiff has not pleaded any facts to demonstrate that [defendants] were personally involved in any of the violations alleged in the complaint"); *Liner v. Goord*, 310 F. Supp. 2d 550, 554 (W.D.N.Y. 2004) ("Where a prisoner asserts an Eighth Amendment claim against a supervisory official, he must show that the supervisor had sufficient personal involvement in the alleged constitutional deprivation." (citing *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir.2001))).

As to the claims against the remaining four Defendants, Mr. Wolterstorff alleges that he suffers from a severe "complex regional pain syndrome" related to an aggressive form of gout. As Mr. Wolterstorff alleges that the pain is severe, the Court assumes for purposes of initial review that Mr. Wolterstorff has a serious medical need.

Mr. Wolterstorff alleges that, on November 3, 2020, APRN Scott ignored his complaints of pain. As a result, Mr. Wolterstorff filed a state habeas action and was entered into a pain management program. Later that same month, APRN Stork allegedly removed him from the pain

management program and discontinued his prescriptions for oxycontin and oxycodone without tapering him off the medications. She allegedly acknowledged his pain, telling Mr. Wolterstorff to "meditate through the pain." As a result of the abrupt cessation of medication, Mr. Wolterstorff allegedly experienced withdrawal symptoms along with the resumption of severe pain and limited use his left arm, shoulder, and neck. He also alleges that, in 2023, RN Janet ignored the orders of his pain management doctor and caused him to experience "severe flare-ups."

Ignoring a doctor's orders is sufficient to state a cognizable claim for deliberate indifference to medical needs. *See Benn v. Nassau Cnty*., No. 10-CV-1963(JS)(AKT), 2010 WL 2976540, at *6 (E.D.N.Y. July 22, 2010) (failure to comply with a doctor's order sufficient to withstand initial review). Thus, the deliberate indifference to medical needs claims will proceed against APRN Stork and RN Janet.

Mr. Wolterstorff alleges that APRN Scott ignored his complaints of pain. Based on the facts alleged, the Court cannot determine whether APRN Scott appreciated and disregarded Mr. Wolterstorff's complaints of pain. As the pain was so severe that a state judge allegedly ordered a pain management program, however, the Court will permit the deliberate indifference to medical needs claim to proceed against APRN Scott for further development of the record. *See Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) ("'Highly relevant' factors 'to the inquiry into whether a given medical condition is a serious one' include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain.'").

Mr. Wolterstorff alleges that APRN Ostheimer falsely accused him of diverting medication and discontinued all mental health medications without notice or taper. Mr. Wolterstorff alleges that he had been prescribed antidepressants and medication for insomnia. He does not identify his mental health conditions. Although the Court cannot, on the current records, determine whether Mr. Wolterstorff has a serious mental health need, the Court will permit this claim to proceed for further development of the record. *See Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003)* ("When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition'").

Accordingly, the deliberate indifference claims against the four remaining Defendants, APRN Stork, RN Janet, APRN Scott, and APRN Ostheimer, will proceed, for now.

### III.     CONCLUSION

All claims, except for the Eighth Amendment claims for deliberate indifference to serious medical and mental health needs, are **SEVERED** from this case and **DISMISSED** under Rule 21 of the Federal Rules of Civil Procedure, without prejudice to Mr. Wolterstorff asserting these claims in other cases.

The claims for deliberate indifference to medical and mental health needs against Dr. Lupis, Dr. Naqvi, Dr. Wright, Dr. Freston, Mental Health Nurse LaPointe, Mental Health APRN Walker, LPN Cyr, and Dr. Thurber are **DISMISSED** without prejudice under 28 U.S.C. § 1915A(b)(1). The case will proceed on the claims for deliberate indifference to medical and

mental health needs against defendants APRN Scott, APRN Stork, APRN Ostheimer, and RN Janet.

If Mr. Wolterstorff wishes to attempt to replead his deliberate indifference to medical and mental health needs claims against any of the Defendants against whom these claims were dismissed without prejudice, namely defendants Lupis, Naqvi, Wright, Freston, LaPointe, Walker, Cyr, and Thurber, in order to attempt to state a viable claim, he may file an Amended Complaint by **May 10, 2024**. An Amended Complaint, if filed, will completely replace the Complaint and the Court will not consider any allegations made in the Complaint in evaluating any Amended Complaint. The Court will review any Amended Complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Mr. Wolterstorff elects to file an Amended Complaint, the case brought against the remaining four Defendants, as identified, in this Initial Review Order will not proceed to service of process. Mr. Wolterstorff **may not**, however, include in an Amended Complaint any of the claims that have been severed and dismissed by this Initial Review Order.

If the Court receives no response from Mr. Wolterstorff by **May 10, 2024**, the Court will presume that Mr. Wolterstorff wishes to proceed on the Complaint, with the claims against the four Defendants permitted here, to go forward in this Initial Review Order, and Mr. Wolterstorff will have to show good cause if he seeks to amend the Complaint in any manner in the future.

**Change of Address**.

If Mr. Wolterstorff changes his address at any time during the litigation of this case, Local Rule 83.1(c)2 provides that he **MUST** notify the court. Failure to do so can result in the dismissal of the case. Mr. Wolterstorff must give notice of a new address even if he is incarcerated. Mr. Wolterstorff should write PLEASE NOTE MY NEW ADDRESS on the notice.

It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr. Wolterstorff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Mr. Wolterstorff should also notify Defendants or counsel for Defendants of his new address.

SO ORDERED.

Dated this 12th day of April 2024 at New Haven, Connecticut.

_/s/ Victor A. Bolden_____
Victor A. Bolden
United States District Judge