UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| ROBERT WOLTERSTORFF, III, | : | |
| *Plaintiff,* | : | |
| | : | No. 3:23-cv-1111 (VAB) |
| v. | : | |
| | : | |
| ANGEL QUIROS, *et al.*, | : | |
| *Defendants*. | : | |
| | : | |

RULING AND ORDER ON MOTION TO DISMISS
AND MOTION FOR SUMMARY JUDGMENT

Before the Court are a motion to dismiss on behalf of two of the Defendants, Scott and

Stork, Mot. to Dismiss, ECF No. 64 ("MTD"), and a motion for summary judgment on behalf of

two other Defendants, Ostheimer and Jackson, Mot. for Summ. J., ECF No. 71 ("MSJ").

Robert Wolterstorff (the "Plaintiff") has not filed a response to either motion.

After careful review of both motions, their attachments, and the record, both Defendants

Scott and Stork's motion to dismiss and Defendants Ostheimer and Jackson's motion for

summary judgment are **GRANTED**.

I.      BACKGROUND

Mr. Wolterstorff, formerly incarcerated in the Connecticut Department of Correction

("DOC"), filed a *pro se* Complaint under 42 U.S.C. § 1983 naming forty-one defendants. *See*

Compl., ECF No. 1 ("Compl."). After an initial review of the Complaint, the Court permitted Mr.

Wolterstorff's deliberate indifference to medical and mental health needs claims to proceed

against APRN Scott, APRN Stork, APRN Ostheimer, and RN Janet,[1] and dismissed all other

---

[1] "RN Janet" has now been identified as LPN Janet Jackson. *See* MSJ at 1. The Court will thus refer to "RN Janet" as "Nurse Jackson" throughout this order.

claims. *See* Initial Review Order, ECF No. 17 at 2, 13-14. After the Court ordered service on Nurses Scott, Stork, Ostheimer, and Jackson, the Court ordered discovery to be completed by April 11, 2025. Order, ECF No. 18.

Nurses Scott and Stork, represented by the same attorney, filed an Answer to the Complaint on August 26, 2024. Answer, ECF No. 21. Nurses Ostheimer and Jackson, represented by a different attorney, *see* Not. of Appearance, ECF No. 61, filed an Answer to the Complaint on September 27, 2024, and November 5, 2024, respectively. Answers, ECF Nos. 24, 36. Approximately one month after answering the Complaint, Nurses Scott and Stork moved to depose Mr. Wolterstorff. First Mot. to Dep., ECF No. 23. The Court denied their motion without prejudice because the Court appointed counsel to represent Mr. Wolterstorff at his deposition. *See* Order, October 8, 2024, ECF No. 28; Order, October 8, 2024, ECF No. 29.

Once the Court appointed counsel to represent Mr. Wolterstorff at his deposition, Nurses Scott and Stork renewed their motion to depose Mr. Wolterstorff on December 3, 2024. Sec. Mot. to Dep., ECF No. 37. The Court granted that motion. Order, January 16, 2025, ECF No. 38. Approximately two weeks later, Nurses Scott and Stork filed their first motion to compel. Am. First Mot. to Comp., ECF No. 40. The motion stated that Nurses Scott and Stork mailed two letters to Mr. Wolterstorff in October of 2024 and December of 2024 seeking an Authorization for the Disclosure of Protected Health Information. *See id.* ¶¶ 5, 7. Nurses Scott and Stork also served discovery requests on Mr. Wolterstorff in October of 2024. *Id.* ¶ 6. As of the date of the motion to compel (February 3, 2025), Mr. Wolterstorff "ha[d] failed to provide any discovery or respond in any way to [Nurses Scott and Stork's] correspondence to [Mr. Wolterstorff] requesting the signature and return of the Authorization form required to facilitate the release of

his CDOC medical records." *Id.* ¶ 8 (emphasis omitted). The motion also stated that Nurses Scott and Stork would not be able to conduct Mr. Wolterstorff's deposition without discovery, and that they would not be able to meet the Court's discovery and dispositive motion deadlines due to Mr. Wolterstorff's failure to comply with their discovery requests. *See id.* ¶¶ 11, 14. Nurses Scott and Stork lastly noted that they "have incurred additional attorney's fees and expenses as a result of [Mr. Wolterstorff's] failure to respond in good faith and comply with discovery." *Id.* ¶ 17.

The Court denied the motion to compel without prejudice in anticipation of conducting a discovery conference with the parties. *See* Order, February 4, 2025, ECF No. 42. In the same order, the Court ordered the parties to file status reports on outstanding discovery in advance of the discovery conference. *See id.* Mr. Wolterstorff's attorney filed a status report, Brewer Stat. Rep., ECF No. 45, but, as observed by the attorney for Nurses Scott and Stork, Mr. Wolterstorff's attorney's status report "largely omitted to address [Mr. Wolterstorff's] outstanding discovery and lack of any response to these Defendants, nor [Mr. Wolterstorff's] refusal to provide a signed Authorization for the release of his CDOC medical records as requested by Defendants Scott and Stork." DeCarlo Stat. Rep., ECF No. 46 ¶ 19 (caps omitted).

After a discovery conference, the Court "extend[ed] the deadline for Mr. Wolterstorff to comply with outstanding discovery requests to April 4, 2025" and extended the discovery deadline to July 11, 2025. *See* Order, February 19, 2025, ECF No. 48 (emphasis omitted). Approximately two months later, Nurses Scott and Stork filed a second motion to compel. Sec. Mot. to Comp., ECF No. 49. The second motion to compel stated that Mr. Wolterstorff "ha[d] still failed to provide any discovery and [Nurses Scott and Stork] ha[d] yet to obtain [Mr. Wolterstorff's] CDOC medical records via signed Authorization." *Id.* ¶ 14 (emphasis omitted).

The Court denied the second motion to compel as moot because Mr. Wolterstorff's "*pro bono* counsel filed a notice seemingly indicating that [Mr. Wolterstorff] ha[d] signed this [Authorization] form and complied with [Nurses Scott and Stork's] discovery requests." Order, May 16, 2025, ECF No. 52 (citing ECF No. 51).

Approximately three weeks after the Court entered this order, Nurses Scott and Stork filed a third motion to compel indicating that, in April or May of 2025, "*pro bono* counsel for [Mr. Wolterstorff] served written responses to [Nurses Scott and Stork's] outstanding Interrogatories and Requests for Production along with a signed records authorization." Third Mot. to Comp., ECF No. 54 ¶ 14 (emphasis added). But Mr. Wolterstorff's "written discovery responses, which were not properly verified by [Mr. Wolterstorff], were rife with improper objections deferring and refusing to provide any substantive answers." *Id.* ¶ 18. These discovery responses were "so nonresponsive that they served no purpose in furthering [Nurses Scott and Stork's] investigation of the claims and d[id] not satisfy any aspect of the initial requests." *Id.* As a result, Nurses Scott and Stork were still unable to depose Mr. Wolterstorff. *See id.* ¶ 25.

One week after filing their third motion to compel, Nurses Scott and Stork moved to extend the discovery deadline. Mot. for Ext., ECF No. 55. The Court granted that motion, extending the discovery deadline to August 25, 2025. Order, June 12, 2025, ECF No. 56. On August 5, 2025, Nurses Scott and Stork filed a fourth motion to compel. Fourth Mot. to Comp., ECF No. 58. The motion stated that, "[t]o date, none of the discovery issues at the subject of the prior and pending Motion(s) to Compel have been resolved and [Mr. Wolterstorff's] deposition still has not been able to be completed[.]" *Id.* ¶ 3 (emphasis omitted).

4

The Court granted Nurses Scott and Stork's third motion to compel. Order, August 8, 2025, ECF No. 59. The Court required Mr. Wolterstorff to "submit his answers to [Nurses Scott and Stork's] interrogatories by September 12, 2025" and to "sit for his deposition by October 10, 2025." *Id.* (emphasis omitted). The Court warned Mr. Wolterstorff in this order that "[f]ailure to comply with this Order may result in sanctions, including dismissal of this case." *Id.* The Court denied Nurses Scott and Stork's fourth motion to compel as moot in light of this order. Order, August 8, 2025, ECF No. 60.

After the deadline passed for Mr. Wolterstorff to "submit his answers to [Nurses Scott and Stork's] interrogatories," Order, August 8, 2025, ECF No. 59, these same Defendants filed a motion to dismiss alleging that Mr. Wolterstorff had failed to prosecute his case against these defendants and had failed to follow the Court's orders. *See* MTD, ECF No. 64 at 1. Nurses Ostheimer and Jackson separately filed a motion for summary judgment. *See* MSJ, ECF No. 71.

## II.   STANDARD OF REVIEW

### A.  Rule 37

Under Rule 37 of the Federal Rules of Civil Procedure, "all litigants, including those proceeding *pro se*, have an obligation to comply with this Court's orders." *Publicola v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022) (cleaned up) (quoting *McDonald v. Head Crim. Ct. Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988)). "When they flout that obligation[,] they, like all litigants, must suffer the consequences of their actions." *McDonald*, 850 F.2d at 124. Rule 16 provides that, "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney … fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). Rule 37(b)(2)(A)(v), in turn, provides that "[i]f

5

a party … fails to obey an order to provide or permit discovery, … the court … may issue further just orders[,]" including "dismissing the action or proceeding in whole or in part[.]" Fed. R. Civ. P. 37(b)(2)(A)(v).

Rule 37 sanctions serve a three-fold purpose: (1) to "ensure that a party will not be able to profit from its own failure to comply" with court orders; (2) to "secure compliance with the particular order at hand"; and (3) to serve as a "general deterrent" for noncompliance, in both the "instant case" and in "other litigation." *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979). Dismissal is among the harshest sanctions and should be "used only in extreme situations, and then only when a court finds willfulness, bad faith, or any fault by the non-compliant litigant." *Agiwal v. Mid Island Mortg. Corp.,* 555 F.3d 298, 302 (2d Cir. 2009) (cleaned up).

"*Pro se* litigants, though generally entitled to 'special solicitude' before district courts, are not immune to dismissal as a sanction for noncompliance with discovery orders." *Agiwal*, 555 F.3d at 302 (quoting *Triestman v. Federal Bureau of Prisons,* 470 F.3d 471, 475 (2d Cir. 2006)). "Dismissal of a *pro se* litigant's action may be appropriate so long as a warning has been given that non-compliance can result in dismissal." *Id.* (internal quotation marks and citation omitted).

### B. Rule 41

Under Rule 41 of the Federal Rules of Civil Procedure, "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). "Unless the dismissal order states otherwise," a dismissal under Rule 41(b) "operates as an adjudication on the merits." *Id.*

"A district court considering a Rule 41(b) dismissal must weigh five factors: (1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal." *Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014) (internal quotation marks and citation omitted).

### C.  Rule 56

Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113–14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113–14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense…." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a

genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The non-moving party cannot "rely on conclusory allegations or unsubstantiated speculation" but "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (cleaned up). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

A court resolves all ambiguities and draws all permissible factual inferences in favor of the non-moving party. *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012). However, although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

## III.    DISCUSSION

Because granting either the motion to dismiss or the motion for summary judgment would not resolve the claims against the other Defendants, the Court considers both motions here, starting with the motion to dismiss.

### A.    Nurses Scott and Stork's Motion to Dismiss

Nurses Scott and Stork "now ask[ ] this Court to enforce its Order warning of dismissal as sanction for continued discovery noncompliance and to dismiss [Nurses Scott and Stork] from the action for [Mr. Wolterstorff's] failure to prosecute and willful noncompliance with the

8

Court's instructions." MTD ¶ 32. The Court ordered Mr. Wolterstorff to file a response to the motion to dismiss by January 16, 2026. *See* Order, December 17, 2025, ECF No. 70. To date, Mr. Wolterstorff has not filed a response.

### i.    Facts

Nurses Scott and Stork maintain in their motion to dismiss that they "have not received even basic discovery from [Mr. Wolterstorff] despite exhaustive efforts." MTD ¶ 2 (emphasis omitted). After the Court ordered Mr. Wolterstorff to produce "better responses" to Nurses Scott and Stork's interrogatories by September 12, 2025, Mr. Wolterstorff did not provide the "better responses" to the interrogatories, as ordered. *Id.* ¶¶ 4–5 (emphasis omitted). Instead, after the deadline for doing so had passed, Mr. Wolterstorff "sent a handwritten letter to … counsel … stating that he was 'willing to work with [counsel]' on the necessary discovery, but [ ] that he was having trouble even receiving discovery related correspondence due to some scheme by the [DOC] to thwart and intercept his legal mail." *Id.* ¶ 6.

Nurses Scott and Stork assert that Mr. Wolterstorff has "not provided *any* documentation sought in discovery to support his claims and has not provided even a compliant records Authorization [ ] to allow [Nurses Scott and Stork] nor the state codefendants to attempt to obtain [Mr. Wolterstorff's] medical records directly from the DOC or by formal request/subpoena of outside medical providers." *Id.* ¶ 8 (emphasis original). Nurses Scott and Stork are thus "still without *even a single page* of documentation supporting [Mr. Wolterstorff's] medical deliberate indifference claims pending for more than two years." *Id.* ¶ 9 (emphasis original).

Nurses Scott and Stork's attorney had been coordinating with Mr. Wolterstorff's attorney to schedule Mr. Wolterstorff's deposition. *See id.* ¶ 12. The parties attempted to schedule the deposition three times. *Id.* ¶ 13. Each scheduled deposition had to be cancelled and postponed because Mr. Wolterstorff failed to produce documents sought in discovery prior to the deposition. *See id.* Before the fourth scheduled deposition, Nurses Scott and Stork's attorney addressed her concerns with Mr. Wolterstorff's attorney about proceeding "blindly without the benefit of any discovery or documents" at the deposition. *Id.* ¶ 16. Mr. Wolterstorff's attorney objected to rescheduling the deposition because "anything sought in discovery could be addressed during the deposition." *Id.*

Nurses Scott and Stork's attorney took Mr. Wolterstorff's deposition on October 9, 2025. *Id.* ¶ 17. The deposition lasted seven hours "largely because [Mr. Wolterstorff] refused to provide concise responses to straightforward questions and repeatedly asserted that he was without personal information of his own claims because he lacked access to any records[.]" *Id.* ¶ 18. The deposition "yielded no significant information to assist [Nurses Scott and Stork's] furtherance of understanding the claims raised against [them] and formulating defenses[.]" *Id.* ¶ 19.

Mr. Wolterstorff brought to the deposition a copy of Nurses Scott and Stork's last-filed motion to compel and the Court's order "compelling his better discovery responses." *Id.* ¶ 20. Mr. Wolterstorff explained at the deposition that "he ha[d] not prepared or even begun to prepare the compelled responses to discovery to comply with this Court's Order[.]" *Id.* ¶ 21. Mr. Wolterstorff provided "several vague explanations including correctional facility transfers and 'a lot going on' with his health and terms of his custody." *Id.* Mr. Wolterstorff also stated that "he

[wa]s not presently in possession of *any* documents or evidence to support his claims, explaining that he at one time had a large stack of unidentified documents, which he claims were confiscated and destroyed by the [DOC] at some point between transfer among facilities years prior." *Id.* ¶ 10 (emphasis original). When asked what evidence Mr. Wolterstorff would rely on to prove his claims at trial, Mr. Wolterstorff responded, "none." *Id.* ¶ 22 (emphasis omitted).

### ii.    Reasons for Dismissal

Nurses Scott and Stork now move to dismiss the claims against them under Rules 37(b)(2)(A) and 41(b) of the Federal Rules of Civil Procedure. *See* MTD at 7–8. The Court considers whether dismissal is appropriate under those Rules, starting with Rule 37(b)(2)(A).

### a. Rule 37

Under Rule 37, the Court considers the four *"Agiwal* factors" in deciding whether to dismiss a case: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *Id.* (cleaned up); *see also J.C. v. Zimmerman*, 150 F.4th 136, 146 (2d Cir. 2025) (referring to these four factors as the "*Agiwal* factors"). "These factors are not exclusive, and they need not each be resolved against the party" opposing sanctions. *Id.* (internal quotation marks and citation omitted). In deciding whether these factors are met, "the district court is free to consider the full record in the case…." *Id.* at 147 (cleaned up). "In other words, in determining whether Rule 37 sanctions are warranted, the district court may weigh not only the straw that finally broke the camel's back, but all the straws that the recalcitrant party piled on over the course of the lawsuit." *Id.* (internal quotation marks and citation omitted).

11

As to the first *Agiwal* factor, "the willfulness of the non-compliant party or the reason for noncompliance," *Agiwal*, 555 F.3d at 302, "[n]on-compliance may be deemed willful when the court's orders have been clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control." *Lee v. Connecticut Dep't of Child*., No. 3:11CV01910 (AWT), 2015 WL 12991321, at *5 (D. Conn. Sept. 30, 2015), *aff'd sub nom. Lee v. Katz*, 669 F. App'x 57 (2d Cir. 2016) (cleaned up). "A party's persistent refusal to comply with a discovery order presents sufficient evidence of wil[l]fulness, bad faith or fault." *Id.* (cleaned up).

First, "the court's orders have been clear[.]" *Id.* Before Nurses Scott and Stork were even served with Mr. Wolterstorff's Complaint, the Court ordered that "[d]iscovery … *shall* be completed by April 11, 2025." Order, August 5, 2024, ECF No. 18 (first emphasis added; second emphasis omitted). "[I]t is generally clear that 'shall' imposes a mandatory duty." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 172 (2016). Thus, Mr. Wolterstorff was on notice in August of 2024 that he had a mandatory duty to disclose discovery to Defendants by April 11, 2025. *See also* Standing Order, August 5, 2024, ECF No. 19 at 1–2 (describing the "materials" that "the self-represented plaintiff shall provide" to Defendants "[w]ithin 45 days from the[ir] appearance…."). One year later, the Court issued an order indicating that "Mr. Wolterstorff must submit his answers to Defendants' interrogatories by September 12, 2025." Order, August 8, 2025, ECF No. 59. "Must," like "shall," is "language of an unmistakably mandatory character[.]" *Hewitt v. Helms*, 459 U.S. 460, 471–72 (1983). Thus, the Court was as clear in August of 2025 as it was in August of 2024 that Mr. Wolterstorff had to produce the discovery sought by Defendants.

12

Second, Mr. Wolterstorff "understood" the Court's orders. *Lee*, 2015 WL 12991321, at *5. Though Mr. Wolterstorff "ha[d] not provided the compelled better Interrogatory answers pursuant to this Court's [August 8, 2025] Order," MTD ¶ 5 (bracketed material added for clarification; emphasis omitted), Mr. Wolterstorff brought a copy of Nurses Scott and Stork's "last renewed Motion to Compel *and* this Court's Order compelling his better discovery responses" to his October 9, 2025, deposition. *Id.* ¶¶ 17, 20 (emphasis original). Mr. Wolterstorff subsequently filed a motion acknowledging "Defendant[']s counsel[s] claims that [Mr. Wolterstorff] ha[d] been noncompliant with the [C]ourt[']s orders" and that "[t]here are several questions at hand regarding [Mr. Wolterstorff's] follow through on court orders[.]" Mot. for Hear., ECF No. 66 at 1. Mr. Wolterstorff's physical possession of the Court's order at his deposition and his acknowledged alleged non-compliance with it afterwards shows he "understood" the Court's orders. *Lee*, 2015 WL 12991321, at *6 (concluding that, "based on the plaintiff's responses to the court's orders, she understood the orders.").

Third, Mr. Wolterstorff's "non-compliance [wa]s not due to factors beyond [his] control." *Id.* at *5. At Mr. Wolterstorff's deposition, he provided "vague explanations including correctional facility transfers and 'a lot going on' with his health and terms of his custody" to explain his failure to comply with the Court's August 8, 2025, order. MTD ¶ 21. Mr. Wolterstorff also explained that documents in his possession were "confiscated and destroyed by the [DOC] at some point between transfer among facilities years prior." *Id.* ¶ 10. But the Court's August 8, 2025, order only required Mr. Wolterstorff to "submit his answers to [Nurses Scott and Stork's] interrogatories," not produce any documents. *See* Order, August 8, 2025, ECF No. 59.

13

Nurses Scott and Stork attached the interrogatories propounded to Mr. Wolterstorff as exhibits to their third motion to compel. *See* Third Mot. to Comp., Ex. A-1–A-2, ECF Nos. 54-1–54-2. Many, if not most, of the interrogatories could be answered by Mr. Wolterstorff without referencing records. *See generally id.* For example, Nurse Stork's first interrogatory asks Mr. Wolterstorff to state, "[i]n [his] own words and with greater detail than included in [his] Complaint, … any and all facts and instances which [he] believe[d] support[ed] [his] claim that Viktoriya Stork, APRN individually violated [his] constitutional rights distinctly from other named Defendants." Third Mot. to Comp., Ex. A-1, ECF No. 54-1 at 3 (caps omitted). Mr. Wolterstorff objected to this interrogatory as "[o]verly broad and vague and seek[ing] information better suited for a deposition." *Id.* Mr. Wolterstorff also objected to this interrogatory "because it s[ought] information from third parties and information not within [his] possession, custody, control, or personal knowledge." *Id.* But the interrogatory merely asked Mr. Wolterstorff to describe, "[i]n [his] own words," how Nurse Stork violated his rights—which does not require "information from third parties and information not within [his] possession, custody, control, or personal knowledge." *Id.*

Mr. Wolterstorff's answers to the interrogatories suggest that he was intentionally delaying his response to Nurses Scott and Stork's discovery inquiries until his deposition. *See id.* (objecting to interrogatory as "seek[ing] information better suited for a deposition."). But this deposition had to be rescheduled four times because Mr. Wolterstorff had not provided any discovery to Nurses Scott and Stork. *See* MTD ¶ 16. Before Nurses Scott and Stork finally relented to taking Mr. Wolterstorff's deposition "blindly without the benefit of any discovery or

14

documents," Mr. Wolterstorff's counsel objected to rescheduling it again because "anything sought in discovery could be addressed during the deposition." *Id.*

When the deposition finally occurred, though, it lasted seven hours without "yield[ing] [any] significant information to assist [Nurses Scott and Stork's] furtherance of understanding the claims raised against [them] and formulating defenses…." *Id.* ¶ 19. Mr. Wolterstorff had, at that point, succeeded in preventing Nurses Scott and Stork from obtaining "even basic discovery from [Mr. Wolterstorff] despite exhaustive efforts." *Id.* ¶ 2 (emphasis omitted). In other words, at the close of discovery, Mr. Wolterstorff had "profit[ed] from [his] own failure to comply" with court orders, *Cine Forty-Second St. Theatre Corp.*, 602 F.2d at 1066, because Nurses Scott and Stork were left with no evidence with which to defend themselves. This was due solely to Mr. Wolterstorff's deliberate actions, not any "factors beyond [Mr. Wolterstorff's] control." *Lee*, 2015 WL 12991321, at *5. This factor thus weighs in favor of dismissal.

As to the second *Agiwal* factor, "the efficacy of lesser sanctions," *Agiwal*, 555 F.3d at 302, "lesser sanctions" may include, for example, "repeatedly allowing [Mr. Wolterstorff] additional time to comply with the discovery orders, informing [Mr. Wolterstorff] of the actions he must take in order to comply with the orders, and warning [Mr. Wolterstorff] about the threat of dismissal." *Minotti v. Lensink*, 895 F.2d 100, 103 (2d Cir. 1990) (approvingly describing these "numerous options" the district court considered before dismissal). But none of these "lesser sanctions" would be "efficac[ious]," *Agiwal*, 555 F.3d at 302, because the Court has already taken these steps without success.

After Mr. Wolterstorff failed to provide discovery by the Court's initial deadline, it extended the discovery deadline in February of 2025, *see* Order, February 19, 2025, ECF No. 48,

and again in June of 2025. *See* Order, June 12, 2025, ECF No. 56. When Mr. Wolterstorff still had not provided answers to Nurses Scott and Stork's interrogatories in August of 2025, the Court extended the deadline for Mr. Wolterstorff to answer these interrogatories for a third time. *See* Order, August 8, 2025, ECF No. 59. When Nurses Scott and Stork filed their motion to dismiss in October of 2025, Mr. Wolterstorff "ha[d] not provided the compelled better Interrogatory answers pursuant to this Court's Order." MTD ¶ 5 (emphasis omitted). To date, "repeatedly allowing [Mr. Wolterstorff] additional time to comply with the discovery orders," *Minotti*, 895 F.2d at 103, has not worked.

As it relates to the interrogatory responses specifically, the Court has already "inform[ed] [Mr. Wolterstorff] of the actions he must take in order to comply with the orders[.]" *Id.* In its August 2025 order, the Court described how to comply with the Court's discovery orders by ordering Mr. Wolterstorff to "submit his answers to [Nurses Scott and Stork's] interrogatories by September 12, 2025." Order, August 8, 2025, ECF No. 59 (emphasis omitted). Mr. Wolterstorff did not do so. *See* MTD ¶ 5. The Court also "warn[ed] [Mr. Wolterstorff] about the threat of dismissal," *Minotti*, 895 F.2d at 103, in the same August 2025 order. *See* Order, August 8, 2025, ECF No. 59 (stating that "[f]ailure to comply with this Order may result in sanctions, including dismissal of this case.").

In light of Nurses Scott and Stork's four motions seeking to compel Mr. Wolterstorff to produce basic information about his claims, *see* ECF Nos. 40, 49, 54, 58, and the Court's repeated extensions of deadlines, clear instructions, and threats of dismissal for failure to comply with its orders, *see* ECF Nos. 48, 56, 59, no sanction short of dismissal would be "efficac[ious]," *Agiwal*, 555 F.3d at 302, to address Mr. Wolterstorff's persistent refusal to follow court orders.

16

*See Ctr. for Monitoring Impact of Peace, Inc. v. Ctr. for Monitoring Impact of Peace, R.A.*, No. 06 CIV 2390 LAP, 2010 WL 3958823, at *3 (S.D.N.Y. 2010) ("The Court has no reason to suspect that Plaintiff would be responsive if lesser sanctions or court orders were imposed. Given that Plaintiff has continually delayed any progress in this litigation and failed to respond to orders of this Court, lesser sanctions would be useless."); *Feurtado v. City of New York*, 225 F.R.D. 474, 480 (S.D.N.Y. 2004) ("[R]epeated violation of orders of this Court leads to the inexorable conclusion that no sanction short of dismissal would effectively address [plaintiff's] conduct."); *Smith v. Human Res. Admin.*, No. 91 Civ. 2295, 2000 WL 307367, at *3 (S.D.N.Y. 2000) ("[L]esser sanctions are not appropriate" because "[c]ourt orders and direction have not prompted plaintiff to move her case forward."). This factor thus weighs in favor of dismissal, as well.

As to the third *Agiwal* factor, "the duration of the period of noncompliance," *Agiwal*, 555 F.3d at 302, the Court ordered Mr. Wolterstorff to begin providing discovery materials "[w]ithin 45 days from the appearance of any defendant[.]" Standing Order, August 5, 2024, ECF No. 19 at 1. Nurses Scott and Stork appeared by filing their answer on August 26, 2024. Answer, ECF No. 21. Thus, under the Court's Standing Order, ECF No. 19 at 1, Mr. Wolterstorff was to begin providing discovery materials to Nurses Scott and Stork by October 10, 2024.

But by the time Nurses Scott and Stork filed their motion to dismiss on October 16, 2025, they "ha[d] not received even basic discovery from Plaintiff...." MTD ¶ 2 (emphasis omitted). Thus, the Court calculates "the duration of the period of noncompliance," *Agiwal*, 555 F.3d at 302, as approximately one year. *See Bricklayers & Allied Craftworkers Loc. 2, Albany, New York Pension Fund by Lefsyk v. RJ Young Constr., LLC*, No. 1:23-CV-01039 (AMN/PJE), 2025

17

WL 447730, at *7 (N.D.N.Y. Feb. 10, 2025) (noting that "district courts recognize that the duration of the period of noncompliance is measured by the time between when discovery was due and when the Motion was filed." (internal quotation marks and citation omitted)). The Second Circuit has affirmed sanctions arising from similar or even shorter delays caused by noncompliance with discovery orders. *See*, *e.g.*, *Battiste-Downie v. Covenant House*, 471 F. App'x 78, 79 (2d Cir. 2012) (summary order) (one year); *Phelan v. Cambell*, 507 F. App'x 14, 16 (2d Cir. 2013) (summary order) (seven months); *Agiwal*, 555 F.3d at 303 (six months); *Embuscado v. DC Comics*, 347 F. App'x 700, 701 (2d Cir. 2009) (summary order) (three months). This factor too weighs in favor of dismissal.

As to the final *Agiwal* factor, "whether the non-compliant party had been warned of the consequences of noncompliance," *Agiwal*, 555 F.3d at 302, "[d]ue process requires that courts provide notice and an opportunity to be heard before imposing *any* kind of sanctions." *Reilly v. NatWest Mkts. Grp. Inc.*, 181 F.3d 253, 270 (2d Cir. 1999) (emphasis in original) (internal quotation marks omitted). "In general, such notice should alert the party to the particular sanction under consideration." *Funk v. Belneftekhim*, 861 F.3d 354, 369 (2d Cir. 2017) (internal quotation marks and citation omitted). The Court's August 8, 2025, order requiring Mr. Wolterstorff to "submit his answers to Defendants' interrogatories by September 12, 2025," warned Mr. Wolterstorff that "[f]ailure to comply with this Order may result in sanctions, including dismissal of this case." Order, August 8, 2025, ECF No. 59 (emphasis omitted). This notice was sufficient to "alert [Mr. Wolterstorff] to the particular sanction under consideration." *Funk*, 861 F.3d at 369; *see also Valentine v. Museum of Modern Art*, 29 F.3d 47, 50 (2d Cir. 1994) (noting that "[t]he severe sanction of dismissal with prejudice may be imposed even against a plaintiff who is

proceeding pro se, so long as a warning has been given that noncompliance can result in dismissal."). This factor also weighs in favor of dismissal.

Accordingly, because all four *Agiwal* factors weigh in favor of dismissal, the claims against Nurses Scott and Stork must be dismissed with prejudice under Rule 37(b)(2)(A)(v). *See Embuscado*, 347 F. App'x at 701 (affirming Rule 37 dismissal when all four *Agiwal* factors weighed in favor of dismissal); *Lee*, 669 F. App'x at 58–59 (same); *Buckingham v. Lewis Gen. Tires, Inc.*, 809 F. App'x 34–36 (2d Cir. 2020) (summary order) (same).

### b. Rule 41

Even if dismissal of the claims against Nurses Scott and Stork would be improper under Rule 37(b)(2)(A)(v), dismissal of the claims against these Defendants would be proper under Rule 41(b). Because "[t]here is significant overlap between the factors used to determine whether dismissal is warranted under Rule 37(b) and under Rule 41[,]" *Greene v. McMahon*, No. 3:21CV01513(SALM), 2022 WL 6771378, at *3 (D. Conn. Oct. 11, 2022), "th[e] Court need not repeat the discussion of redundant factors in detail." *Taylor v. My People Cmty. Servs.*, No. 3:23-CV-01505 (VDO), 2025 WL 2020152, at *8 (D. Conn. July 11, 2025) (internal quotation marks and citation omitted). Thus, the Court additionally only (1) considers "whether the defendants are likely to be prejudiced by further delay in the proceedings," and (2) "balance[s] [ ] the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard[.]" *Baptiste*, 768 F.3d at 216; *see also Taylor*, 2025 WL 2020152, at *8–9 (additionally considering these factors after considering the other three factors in its Rule 37(b) analysis).

As to the first additional factor, "whether the defendants are likely to be prejudiced by further delay in the proceedings," *Baptiste*, 768 F.3d at 216, when considering whether a

19

defendant has suffered prejudice as a result of a plaintiff's failure to follow court orders, courts look to factors such as (1) whether the proceedings were delayed, (2) whether the moving party has incurred unnecessary litigation costs, (3) whether the case may proceed to summary judgment, and (4) whether a "[d]efendant has not had a full and fair opportunity to investigate [a] [p]laintiff's claims and complete discovery." *See Taylor*, 2025 WL 2020152, at *8. All such factors point to prejudice here.

For reasons detailed above, Mr. Wolterstorff's non-compliance with the Court's discovery orders has delayed resolution of this case for at least one year. These delays, occasioned by Mr. Wolterstorff, have caused Nurses Scott and Stork to "have incurred additional attorney's fees and expenses as a result of Plaintiff's failure to respond in good faith and comply with discovery." First Mot. to Comp., ECF No. 40 ¶ 17. And because Nurses Scott and Stork "have not received even basic discovery from [Mr. Wolterstorff] despite exhaustive efforts" and obtained "no significant information" to understand the claims against them or formulate a defense, MTD ¶¶ 2, 19 (emphasis omitted), the case may not proceed to summary judgment at this point. *See* Mot. to Stay, ECF No. 69 ¶ 9 (indicating that if the motion to dismiss is denied, Nurses Scott and Stork will need additional time to file a summary judgment motion because they are "still without *any* valid discovery responses or documentation of Plaintiff's claims as needed for evidence to support an intended motion for summary judgment…." (emphasis original)). Mr. Wolterstorff's willful disobedience of the Court's discovery orders throughout this case has prevented Nurses Scott and Stork from "ha[ving] a full and fair opportunity to investigate [Mr. Wolterstorff's] claims and complete discovery." *Taylor*, 2025 WL 2020152, at *8. This factor thus weighs in favor of dismissal. *See id.*

Finally, the Court weighs its own interest in docket management against Mr. Wolterstorff's right to be heard. *See Baptiste*, 768 F.3d at 216. While "zeal for a tidy calendar" should not "overcome [a court's] duty to do justice," *Outley v. City of N.Y.*, 837 F.2d 587, 589 (2d Cir. 1988) (cleaned up), the Court cannot "do justice" if a plaintiff brings a lawsuit and then prevents the defendants from defending against it through his own deliberate actions. "Doing justice" requires doing right by all parties. The Court cannot do that here because Mr. Wolterstorff has failed to abide by court orders. Accordingly, this factor weighs in favor of dismissal, too. *See Taylor*, 2025 WL 2020152, at *8 (concluding that this factor weighed in favor of dismissal because plaintiff "ha[d] squandered several opportunities to comply with court orders and to prosecute his case in accordance with the Federal Rules of Civil Procedure.").

Because these additional factors also weigh in favor of dismissal, dismissal is also warranted under Rule 41(b). *See Taylor*, 2025 WL 2020152, at *8 (concluding that "Rule 41(b) further bolsters the Court's decision to dismiss this action.").

Accordingly, Nurses Scott and Stork's motion to dismiss, ECF No. 64, will be granted.

### B.    Nurses Ostheimer and Jackson's Motion for Summary Judgment

The Court now considers Nurses Ostheimer and Jackson's separately filed motion for summary judgment, which alleges (1) that Mr. Wolterstorff failed to exhaust administrative remedies before filing suit; (2) that Mr. Wolterstorff is collaterally estopped from bringing his claims against Nurses Ostheimer and Jackson; (3) that Mr. Wolterstorff's claims fail on the merits; and (4) that Nurses Ostheimer and Jackson are entitled to qualified immunity. *See* MSJ at 1–2.

21

Because the Court agrees with Nurses Ostheimer and Jackson's exhaustion argument, the Court grants their motion for summary judgment without reaching their other arguments. *See Rodriguez v. Machinski*, No. 3:23-CV-306 (VAB), 2024 WL 4871642, at *9 (D. Conn. Nov. 22, 2024) (concluding that "this Court need not reach the merits of [plaintiff's] claim or Defendants' defense to it" because plaintiff "failed to rebut the affirmative defense of failure to exhaust her administrative remedies or otherwise provide evidence that the administrative remedies were unavailable to her[.]").

### i. Facts

The relevant facts are taken from Defendants' Local Rule 56(a)1 statement and supporting exhibits. *See* Rule 56(a)1 Stmt., ECF No. 71-1. Local Rule 56(a)1 requires a party moving for summary judgment to file "a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried." D. Conn. L. Civ. R. 56(a)1. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. D. Conn. L. Civ. R. 56(a)2. Each denial must include a specific citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)3. Nurses Ostheimer and Jackson informed Mr. Wolterstorff of this requirement. *See* Rule 56(b) Not., ECF No. 71-26. Despite receiving notice of this requirement, Mr. Wolterstorff did not submit a Local Rule 56(a)2 statement (or any resistance to Nurses Ostheimer and Jackson's motion for summary judgment).

That Mr. Wolterstorff is unrepresented does not excuse him from complying with the procedural and substantive rules. *See Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 477

22

(2d Cir. 2006) (noting that "*pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law[.]" (internal quotation marks and citation omitted)). Thus, the facts contained in Nurses Ostheimer and Jackson's Local Rule 56(a)1 statement, where supported by evidence of record, are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)3 ("Failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1[.]"). The Court now recites those facts, along with any relevant facts from Mr. Wolterstorff's Complaint, as they relate to the issue of exhaustion. *See Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) ("A verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist…." (internal quotation marks and citation omitted)).

Mr. Wolterstorff was previously incarcerated in the Connecticut DOC. Rule 56(a)1 Stmt., ECF No. 71-1 ¶ 1. Mr. Wolterstorff was housed at MacDougall-Walker Correctional Institution ("MacDougall") from April 13, 2021, to April 13, 2023, *id.* ¶ 2, and was housed at Garner Correctional Institution ("Garner") from April 13, 2023, to July 28, 2025. *Id.* ¶ 3. During the relevant time period, Nurse Ostheimer was an advanced practice nurse practitioner working at MacDougall. *Id.* ¶¶ 5, 7. And Nurse Jackson was a licensed practical nurse working at MacDougall. *Id.* ¶¶ 4, 6.

Prison officials placed Mr. Wolterstorff in the restrictive housing unit ("RHU") at MacDougall on March 29, 2023. *Id.* ¶ 8. Mr. Wolterstorff remained in the MacDougall RHU until April 12, 2023, *id.*, one day before his transfer to Garner. *See id.* ¶ 3. Mr. Wolterstorff alleged in his Complaint that, while he was in the MacDougall RHU, all the nurses, especially

23

Nurse Jackson, ignored Mr. Wolterstorff's doctor's orders regarding medication. *See* Compl., ECF No. 1 ¶ 18. Mr. Wolterstorff also alleged in his Complaint that Nurse Ostheimer removed Mr. Wolterstorff from his mental health medication after accusing him of "diversion." *Id.* ¶ 6.

Mr. Wolterstorff filed several Health Services Administrative Remedies ("HSARs")[2] once he arrived at Garner. Mr. Wolterstorff filed his first HSAR (4030) on April 26, 2023. Rule 56(a)1 Stmt., ECF No. 71-1 ¶ 52; *see also* Ex. R, ECF No. 71-20. Mr. Wolterstorff filed a second HSAR (4035) on May 1, 2023. Ex. S, ECF No. 71-21. Mr. Wolterstorff filed a third HSAR (4155) on May 12, 2023. Ex. T, ECF No. 71-22. Mr. Wolterstorff filed a fourth (4290) and fifth (4292) HSAR on June 2, 2023. Ex. U, ECF No. 71-23; Ex. V, ECF No. 71-24.

Mr. Wolterstorff's first and second HSARs (4030 and 4035) "were rejected for failing to comply with the procedural requirements of A.D. 8.9." Rule 56(a)1 Stmt., ECF No. 71-1 ¶ 54. Mr. Wolterstorff's third and fourth HSARs (4155 and 4290) were also "both rejected for failing to comply with the procedural requirements of A.D. 8.9." *Id.* ¶ 56. And Mr. Wolterstorff's fifth HSAR (4292) was denied. *Id.* ¶ 57. Mr. Wolterstorff filed no appeals. *See id.* ¶ 58.

### ii.    Application of Legal Standard to Exhaustion Claim

#### a.  The PLRA's Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal lawsuit to exhaust available administrative remedies before a court may hear his case. *See* 42

---

[2] An HSAR is a type of "inmate health services grievance[ ][.]" *Jusino v. Cruz*, No. 3:23-CV-126 (SRU), 2023 WL 4865890, at *3 (D. Conn. July 31, 2023). "There are two types of HSARs available to an incarcerated person: remedies concerning a diagnosis or treatment made by a medical provider, including the decision to provide no treatment for an inmate; and remedies concerning an administrative issue to address 'a practice, procedure, administrative provision or policy or an allegation of improper conduct by a health services provider.'" *Id*. (quoting A.D. 8.9(6)(a)(i)–(ii)).

U.S.C. § 1997e(a) (providing that "[n]o action shall be brought with respect to prison conditions under section 1983 ... , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Ross v. Blake*, 578 U.S. 632, 635 (2016). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Prisoners "cannot satisfy the PLRA's exhaustion requirement solely by ... making informal complaints" to prison officials. *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007); *see also Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (affirming grant of summary judgment for failure to exhaust administrative remedies and stating that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures established by the Connecticut [DOC]."). Rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion" requires incarcerated individuals to use all steps required by the administrative review process applicable to the institution in which he is confined and do so properly. *Jones*, 549 U.S. at 218 (citing *Woodford*, 548 U.S. at 88). "[U]ntimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirement." *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006). And "grievances must [ ] be fully pursued prior to filing a complaint in

25

federal court." *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001), *overruled on other grounds by Porter*, 534 U.S. 516.

Exhaustion may be excused only if remedies are in fact unavailable. *See Ross*, 578 U.S. at 642. The Supreme Court has determined that "available" remedies encompass "those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (internal quotation marks and citation omitted). The *Ross* court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 643–44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 643. "Next, an administrative remedy scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644. The Second Circuit has said "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016).

Exhaustion of administrative remedies is an affirmative defense. *Perttu v. Richards*, 605 U.S. 460, 468 (2025). "Once the defendant provides reliable evidence that administrative remedies were not exhausted before the plaintiff commenced the action, the plaintiff must present evidence showing that he did exhaust his administrative remedies or establish that administrative remedy procedures were not available to him." *Saunders v. Jarrin*, No. 24-CV-54 (SFR), 2025 WL 2783581, at *5 (D. Conn. Sept. 30, 2025).

26

### b.  Administrative Directive 8.9

DOC Administrative Directive ("A.D.") 8.9 governs the resolution of inmate HSARs. *See* Rule 56(a)1 Stmt., ECF No.  71-1 ¶ 47. Nurses Ostheimer and Jackson have submitted a copy of A.D. 8.9 with their motion for summary judgment. *See* Ex. Q, ECF No. 71-19. A.D. 8.9 describes two types of HSARs: remedies concerning a diagnosis or treatment made by a medical provider, including the decision to provide no treatment for an inmate; and remedies concerning an administrative issue to address "a practice, procedure, administrative provision or policy or an allegation of improper conduct by a health services provider." A.D. 8.9(6)(a)(i)–(ii).

Regardless of which type of HSAR an incarcerated person seeks to file, the process involves several steps. First, prior to filing any HSAR, the individual "must attempt to seek informal resolution" of the issue, including by attempting to resolve the issue verbally with the appropriate staff member. A.D. 8.9(6)(b)(ii)(1)–(2). If the verbal communication is unsuccessful, the individual "shall submit a written request via CN 9601, Inmate Request Form." A.D. 8.9(6)(b)(ii)(3). Although that second request is in writing, it is still considered an attempt at informal resolution of the issue. If an incarcerated person submits a written request, a DOC official must respond within fifteen business days from receipt of the written inmate request. A.D. 8.9(6)(b)(ii)(7). If the incarcerated person is not satisfied with the offered informal resolution, they may file an HSAR with the Inmate Request Form attached or an explanation indicating why the Form is not attached. A.D. 8.9(6)(b)(iii). The individual's Level 1 HSAR "must be filed within 30 calendar days of the occurrence or discovery of the cause of or reason for the request for the [HSAR]." A.D. 8.9(6)(b)(iii)(4).

An incarcerated person raising a claim about staff misconduct (such as Mr. Wolterstorff's complaint about Nurses Ostheimer and Jackson's conduct) must submit a completed Level 1 HSAR, and the HSAR Coordinator shall issue a written response within thirty business days of receipt of the complaint. A.D. 8.9(6)(c)(ii)(1)–(3). If the incarcerated individual's Level 1 HSAR is not in compliance with the terms of A.D. 8.9, it shall be rejected, but the individual may correct the deficiency within five calendar days. A.D. 8.9(6)(c)(ii)(2). If the incarcerated person does not correct the defect, the Level 1 HSAR will be rejected without an opportunity for appeal. *Id.*

Once the Level 1 HSAR is correctly submitted, if the incarcerated person does not receive a response within thirty business days (and the individual is not issued an Inmate Administrative Remedies Procedure—Notice of Time Extension), the individual may file a Level 2 HSAR ("Level 2 Appeal"). A.D. 8.9(6)(c)(ii)(4)(a). Alternatively, if the individual receives a response to their Level 1 HSAR but is dissatisfied with the response, they may, within five calendar days of receipt of the decision, file a Level 2 Appeal. A.D. 8.9(6)(c)(iii)(1). The Regional Chief Operating Officer shall conduct the Level 2 review and issue a response in writing within 30 business days. A.D. 8.9(6)(c)(iii)(2)–(3).

If the incarcerated individual does not receive a response to the Level 2 Appeal within thirty business days (and the individual is not issued an Inmate Administrative Remedies Procedure—Notice of Time Extension), the individual may file a CN 8903, Appeal of HSAR Level 3, within a prescribed time period ("Level 3 Appeal"). A.D. 8.9(6)(c)(iii)(4)(a). Level 2 Appeals are the final level of review unless the appeal challenges "Department-level policy,"

"the integrity of the [HSAR] procedure," or a failure to receive a timely response to a Level 2 Appeal. A.D. 8.9(6)(c)(iii)(5); A.D. 8.9(6)(c)(iv)(1).

A Level 3 Appeal must be filed within five calendar days of receipt of the returned Level 2 Appeal. A.D. 8.9(6)(c)(iv)(2). A written response to the appeal shall be provided within thirty business days of receipt. A.D. 8.9(6)(c)(iv)(3)–(4). There is no appeal from a Level 3 response. A.D. 8.9(6)(c)(iv)(5).

### c. Mr. Wolterstorff's Compliance with A.D. 8.9

The undisputed facts show that Nurses Ostheimer and Jackson both worked at MacDougall. Rule 56(a)1 Stmt., ECF No. 71-1 ¶¶ 6–7. Mr. Wolterstorff was housed at MacDougall until April 13, 2023. *Id.* ¶ 2. So, the latest date on which Nurses Ostheimer and Jackson could have violated Mr. Wolterstorff's rights was on April 13, 2023. Any Level 1 HSAR related to Nurses Ostheimer and Jackson thus had to be filed "within 30 calendar days" of April 13, 2023. A.D. 8.9(6)(b)(iii)(4). That would be May 13, 2023. Mr. Wolterstorff filed three Level 1 HSARs before that date, the first on April 26, 2023 (HSAR 4030), the second on May 1, 2023 (HSAR 4035), and the third on May 12, 2023 (HSAR 4155). *See* Ex. R, ECF No. 71-20; Ex. S, ECF No. 71-21; Ex. T, ECF No. 71-22. But all three of these Level 1 HSARs were rejected "for failing to comply with the procedural requirements of A.D. 8.9." Rule 56(a)1 Stmt., ECF No. 71-1 ¶¶ 54, 56. The record contains no evidence that Mr. Wolterstorff sought to correct any of the rejected Level 1 HSARs within five calendar days, A.D. 8.9(6)(c)(ii)(2)(a)(i)(1), so Mr. Wolterstorff had no opportunity to appeal the Level 1 HSARs. *See id.*

The fourth Level 1 HSAR (4290), filed on June 2, 2023, Ex. U, ECF No. 71-23, was not filed "within 30 calendar days" of April 13, 2023, so it was untimely, *see* A.D. 8.9(6)(b)(iii)(4),

and otherwise rejected, Rule 56(a)1 Stmt., ECF No. 71-1 ¶ 56, without correction. The fifth Level 1 HSAR (4292), also filed on June 2, 2023, Ex. V, ECF No. 71-24, was likewise untimely, *see* A.D. 8.9(6)(b)(iii)(4), but it was denied instead of rejected. Rule 56(a)1 Stmt., ECF No. 71-1 ¶ 57. Because that HSAR was denied, Mr. Wolterstorff could have appealed it, *see* A.D. 8.9(6)(c)(iii)(1), but there is no evidence in the record that Mr. Wolterstorff did so. *See* Rule 56(a)1 Stmt., ECF No. 71-1 ¶ 58.

None of Mr. Wolterstorff's HSARs worked to exhaust his administrative remedies under the DOC Administrative Directives. Untimely grievances do not serve to exhaust administrative remedies. *See Lebron v. Thibodeau*, No. 3:22-CV-804 (OAW), 2023 WL 3057159, at *3 (D. Conn. Apr. 24, 2023) (noting that "an untimely grievance fails to comply with PLRA's 'proper exhaustion' requirement[.]"). Nor do rejected grievances. *See Pommer v. Vaughn*, No. 3:07-CV-537(WWE), 2009 WL 1490570, at *4 (D. Conn. May 27, 2009) (concluding that plaintiff had not exhausted his administrative remedies because his "grievance was rejected and [ ] the appeal of the dismissal was filed late.").

Even if Mr. Wolterstorff's first four Level 1 HSARs were sufficient and improperly rejected, proper exhaustion required Mr. Wolterstorff to use all steps required by the administrative review process applicable to the institution in which he is confined and to do so properly. *See Day*, 354 F. App'x at 474 (noting that "the Supreme Court held that the exhaustion requirement of the PLRA cannot be satisfied by an untimely or otherwise procedurally defective administrative grievance or appeal and that the PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits." (internal quotation marks omitted) (quoting *Woodford*, 548 U.S. at 83–

30

84)); *Urbanski v. Dep't of Correction*, No. 3:18-CV-01323(VLB), 2019 WL 6683047, at *6 (D. Conn. Dec. 5, 2019) (noting that "[t]o properly exhaust a § 1983 claim in Connecticut, a prisoner must comply with *all* steps set forth in Directive 9.6, including deadlines and utilization of each step of the administrative appeal process." (emphasis original) (internal quotation marks and citation omitted)).

Thus, proper exhaustion required Mr. Wolterstorff to seek informal resolution, A.D. 8.9(6)(b)(ii)(1), file a Level 1 HSAR grievance, *id.* 8.9(6)(b)(iii)(1), file a corrected Level 1 HSAR grievance if the initial Level 1 HSAR grievance was procedurally deficient, *id.* 8.9(6)(c)(ii)(2)(a)(i)(1), file a Level 2 HSAR appeal, *id.* 8.9(6)(c)(iii)(1), and file a Level 3 HSAR appeal. *Id.* 8.9(6)(c)(iv)(2); *see Rodriguez,* 2024 WL 4871642, at *7. Mr. Wolterstorff did not do this.

The only Level 1 HSAR that was appealable was the fifth Level 1 HSAR (4292), but Mr. Wolterstorff failed to appeal the denial of that HSAR. *See* Rule 56(a)1 Stmt., ECF No. 71-1 ¶ 58. Because "[a] plaintiff who files a Level 1 grievance will not be found to have exhausted his remedies if he had not pursued the available remedy of filing a level two grievance," *Simms v. Grady*, No. 3:20CV01719(SALM), 2022 WL 1094077, at *6 (D. Conn. Apr. 12, 2022) (cleaned up), Mr. Wolterstorff's fifth grievance did not work to exhaust his administrative remedies, either.

Because Mr. Wolterstorff's HSARs were untimely, rejected and not corrected, not appealed, or suffered from some combination of these procedural defects, Nurses Ostheimer and Jackson have met their burden of showing that Mr. Wolterstorff failed to exhaust his administrative remedies. *See Ramos v. Cheney*, No. 3:24-CV-00006 (MPS), 2025 WL 1835971,

31

at *4–5 (D. Conn. July 3, 2025) (concluding that "the defendants have met their burden of showing that the plaintiff failed to exhaust his administrative remedies" because "the record contain[ed] no evidence that the plaintiff filed a Level 2 grievance[.]"). The burden thus shifts to Mr. Wolterstorff to present evidence showing that he did exhaust his administrative remedies or establish that administrative remedy procedures were not available to him. *See Saunders*, 2025 WL 2783581, at *5.

But Mr. Wolterstorff presented no evidence in opposition to the motion for summary judgment, and he thus has failed to meet his burden of showing that he exhausted administrative remedies. And because Mr. Wolterstorff filed no response to the motion for summary judgment, he has made no attempt to explain how administrative remedy procedures were unavailable to him under *Ross*.

Mr. Wolterstorff has not explained, for instance, that the administrative remedy procedures "operat[ed] as a simple dead end" or were "so opaque that [they] become[ ], practically speaking, incapable of use." *Ross*, 578 U.S. at 643. Nor does he describe "prison administrators thwart[ing] inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644. In the absence of such an explanation, and the Court finding none itself, Mr. Wolterstorff has not met his burden of showing that administrative remedies were unavailable.

Accordingly, because there is no material dispute of fact as to whether Mr. Wolterstorff exhausted his administrative remedies or whether such remedies were unavailable to him, summary judgment will enter in favor of Nurses Ostheimer and Jackson. *See Ramos*, 2025 WL

32

1835971, at *5 (granting summary judgment in favor of defendants because plaintiff failed to exhaust administrative remedies or show that administrative remedies were unavailable to him).

## IV.    CONCLUSION

For the reasons stated above, Defendants Scott and Stork's motion to dismiss and Defendants Ostheimer and Jackson's motion for summary judgment are **GRANTED**.

The Clerk of Court is directed to enter judgment and close this case.

**SO ORDERED**, this 8th day of May 2026 at New Haven, Connecticut.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge

33